IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| LESMAN JEROAN RIVERA-VASQUEZ | ) )   No. 4:25-cr-00503-JMD ) |
| *Defendant*. | ) ) ) ) |

### **SENTENCING OPINION**

The Court issues this opinion to further explain in writing what the Court explained earlier today in its oral order sentencing Lesman Rivera-Vasquez. The Court sentenced him to triple the time the parties requested. This heavier prison sentence is necessary to promote deterrence and respect for the law.

Rivera-Vasquez pleaded guilty to possessing ammunition while in the country illegally, 18 U.S.C. § 922(g)(5). He also possessed a firearm, which likewise is unlawful for illegal aliens. *Id*. "[I]n the usual sentencing," the district court will "impose a sentence within the [Guidelines] range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (citation omitted). Here, the Guidelines range is 10 to 16 months. But as part of the plea negotiation, the parties jointly recommended a sentence far lower: time served, or just shy of 4 months.

That is too low. The Court is required by statute to impose a sentence high enough to deter illegal immigration offenses and promote respect for the rule of law. 18 U.S.C. § 3553(a)(2)(A)–(B). Those needs are considerable. The country experienced record-breaking

1

rates of illegal immigration from 2021 through 2024. It is the antithesis of respect for the law when millions of people—Rivera-Vasquez among them—continuously flout the law.

In crafting an appropriate sentence, the Court considers not only that surge of illegal immigration, but also the Federal Government's contribution to that surge. Rivera-Vasquez does not dispute that the Federal Government's decisions during that time fueled the record rates of illegal immigration. Nor does he dispute that courts generally can and should take factors like that into account. Indeed, he cites a case that expressly says courts may consider the Federal Government's nonenforcement actions when crafting a sentence. So the Court considers *all* factors that have decreased deterrence and harmed compliance with immigration laws.

The Court issues a sentence calibrated to help offset those previous problems. Not only is the need to deter immigration offenses and promote respect for immigration law considerable, but immigration offenses harm innocent people. Rivera-Vasquez put the lives of two officers at risk when he ran a stop sign, causing an accident with their police car. Had he not flouted federal law for years when he stayed in the country illegally, ignoring an order of removal, he never would have caused that accident. All these factors support a steeper sentence: at the high end of the Guidelines range or even above it.

At the same time, the Department of Justice argues that the prospect of lower sentences facilitates plea negotiations, leading to more deportations by saving prosecutors from expending resources on a trial. All this, the Department says, furthers deterrence. The Court must balance the need for efficient resolution with the considerable need to deter immigration offenses and promote respect for the rule of law. For this reason, the Court issues a sentence within the Guidelines that is three times what the parties requested, but

2

about half of what the Court would have imposed had Rivera-Vasquez not pleaded guilty. In addition to a term of supervised release and a fine that were discussed orally at sentencing, the Court sentences Rivera-Vasquez to 12 months and 1 day of imprisonment. The Federal Government has committed to deporting him after he completes his sentence.

## Background and Analysis

Rivera-Vasquez pleaded guilty to possessing ammunition while "illegally or unlawfully in the United States," 18 U.S.C. § 922(g)(5). He also unlawfully possessed a firearm. To facilitate that guilty plea, the Department agreed that it would ask the Court to sentence Rivera-Vasquez only to time served. The Department generally is bound by the promises it makes in plea agreements. *Santobello v. New York*, 404 U.S. 257 (1971). Now, at the time of sentencing, Rivera-Vasquez has served between 3 and 4 months.

In October, the Court issued an order questioning whether the parties' request for such a low sentence would be consistent with the obligation to impose a sentence high enough to deter illegal immigration offenses. ECF 18. The Court cited Supreme Court precedent determining that the government's enforcement or nonenforcement decisions affect deterrence. The Court cited *General Land Office v. Biden*, 722 F. Supp. 3d 710 (S.D. Tex. 2024), which held that the Federal Government violated the law from 2021 until 2024 and found that this violation increased illegal immigration. ECF 18 at 3. And the Court cited government statistics stating that the rate of illegal border crossings plummeted this year after the Federal Government changed its policies. The Court asked the parties to brief whether, in light of the Federal Government's past actions, the need for deterrence requires the Court to issue a higher sentence.

3

In his response brief, Rivera-Vasquez never disputes that courts may consider previous nonenforcement actions of the Federal Government when determining the length of a sentence. Indeed, he cites a decision that says "the federal government's policy of non-enforcement" is relevant to crafting an appropriate sentence. *United States v. Aguilar-Calvo*, 945 F.3d 464, 467 (6th Cir. 2019). He does not dispute that the Federal Government's actions from 2021 through 2024 fueled the increase in immigration offenses. And he does not contest that heightened sentences can increase general deterrence. Rivera-Vasquez just does not think any amount of increased deterrence here would be meaningful because, in his words, "the policies and rhetoric of the Trump administrative have *already* deterred unlawful entries" (emphasis in original).

The Court agrees with Rivera-Vasquez that the Federal Government's new policies have greatly increased deterrence. But that does not mean courts have no role in further fostering deterrence. To the contrary, both the Executive Branch and courts are critical to deterrence because it is the Executive Branch that brings prosecutions and it is the courts that select and impose sentences.

Harsher sentences promote greater deterrence than nominal sentences. One element of Rivera-Vasquez's offense—and of many other criminal immigration offenses—is unlawful presence in the United States. *E.g.*, § 922(g)(5). By definition, a person cannot commit this offense unless he is in the country "illegally or unlawfully." *Id.* So anything that deters illegal immigration (or encourages self-deportation) necessarily deters crimes like this one—as well as other immigration crimes, such as the crime of "elud[ing] examination or inspection by immigration officers" while in the country, 8 U.S.C. § 1325. Countless persons who have committed immigration offenses remain in the country. And countless persons—illegally

4

present—are at risk of committing further immigration-related offenses. The prospect of a substantial criminal sentence may deter those individuals and encourage them to comply with the law through self-deportation.

Harsher sentences likewise can promote the rule of law. In addition to requiring courts to issue sentences high enough to deter criminal conduct, 18 U.S.C. § 3553(a)(2)(B), Congress directed courts to issue sentences high enough to "promote respect for the law," § 3553(a)(2)(A). For years, Rivera-Vasquez flouted the law. He spent his entire adult life violating federal immigration laws, which is one of the elements at issue in the offense to which he pleaded guilty. The Court cannot issue a sentence of less than 4 months after his lengthy misconduct.

At the same time, a sentence that is too high can hinder deterrence because it can reduce any incentive for plea negotiations, decreasing the number of cases that courts and the Department can process. The Department notes that the prospect of a lower sentence may hasten "deportation and removal" by encouraging plea agreements. And the Department notes that Rivera-Vasquez quickly pleaded guilty and waived indictment, expressing acceptance of responsibility. Courts should hesitate to issue sentences that could undermine future plea bargains, because plea bargains "are important components of this country's criminal justice system." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). They "conserve vital and scarce resources," *id.*, and as the Department points out, they can facilitate increased deportation. It is not just the overall sentence that matters for deterrence. The number of successful prosecutions also matters.

The Court can accomplish both goals. The requested sentence of not even 4 months is too nominal to deter criminal immigration offenses to any meaningful extent or to promote

5

respect for the rule of law. But the Court agrees that a sentence should adequately consider Rivera-Vasquez's decision to plead guilty because guilty pleas free resources for law enforcement. Balancing the need not to interfere with plea bargains with the considerable need to impose a higher sentence that promotes deterrence and the rule of law, the Court concludes that a sentence within the Guidelines range is appropriate: 12 months and 1 day.

This sentence serves the Department's objectives of encouraging plea agreements. Had Rivera-Vasquez not pleaded guilty, his Guidelines range would have been 15 to 21 months. And based on the aggravating factors—including his years-long, continuous violation of immigration laws—the Court believes a sentence at the high end (21 months) or even above the Guidelines range would have been appropriate had Rivera-Vasquez not accepted responsibility, pleaded guilty, and waived indictment. Indeed, the Court notes that Rivera-Vasquez went above and beyond most criminal defendants by waiving indictment as well as pleading guilty. The Court credits both those decisions. His plea decision and indictment waiver mean he receives substantial leniency compared to the alternative sentence the Court would have imposed.

This sentence also fosters deterrence, promotes respect for the rule of law, and accounts for the aggravating factors. Four months is too low in light of the heightened need to deter illegal immigration offenses and promote respect for immigration law. By illegally remaining in this country, Rivera-Vasquez put the lives of two police officers at risk. He was caught only because he ran a stop sign and caused a car accident that sent two officers to the hospital. Fortunately, the record reflects that both officers are expected to make a full recovery. But they faced potential loss of life because Rivera-Vasquez refused, for years, to comply with immigration laws. A Guidelines sentence adequately accounts for these factors.

In response to the Court's order to brief this issue, Rivera-Vasquez raises several arguments against the Court's considering the effects of the previous actions of the Federal Government.  Each one fails.

**1.** Rivera-Vasquez first argues that a sentence that considers the effects of the Federal Government's actions from 2021 through 2024 would violate the party-presentation principle.  Under that principle, courts "normally decide only questions presented by the parties"; it is generally improper to "[e]lect[] not to address the party-presented controversy" and instead to pursue a "contrary theory" that amounts to a "radical transformation" of the case.  *United States v. Sineneng-Smith*, 590 U.S. 371, 376, 79–80 (2020) (citations omitted).

The Court has done no such thing.  Both parties agree that the Court must determine what sentence would "afford adequate deterrence to criminal conduct" and "promote respect for the law."  § 3553(a)(2)(A)–(B).  The Court is assessing *all* facts relevant to these statutory provisions.  *See Pepper v. United States*, 562 U.S. 476, 488 (2011) (concluding that courts may consider the "widest possible breadth of information" relevant to a defendant).  Rivera-Vasquez even cited a case that agrees that "the federal government's policy of non-enforcement" is relevant to crafting an appropriate sentence.  *Aguilar-Calvo*, 945 F.3d at 467.  The difference is stark between the "radical transformation" in *Sineneng-Smith*, where the court *ignored* the issue presented by the parties, and the Court's full assessment here of statutory factors both sides agree must be assessed.

Rivera-Vasquez also misperceives how sentencing differs inherently from constitutional challenges like in *Sineneng-Smith*.  Outside the sentencing context, courts generally stick to the issues raised by the parties.  But inside the sentencing context, the law *requires* courts to conduct an independent investigation.  Federal Rule of Criminal Procedure

7

32(c) imposes this "[r]equire[ment]" on probation officers, who are officers of the judiciary, 18 U.S.C. § 3602. Similarly, courts can conduct independent investigations that go beyond presentence investigation reports and can require a defendant to undergo a psychiatric or psychological examination, even if neither the government nor the defendant wants one. § 3552(b)–(c).

It is thus not surprising that the Supreme Court says courts may consider facts not pressed by the parties. "[T]here will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government." *Irizarry v. United States*, 553 U.S. 708, 715 (2008). When that potential arises, "[s]ound practice dictates that judges in all cases should make sure that the information [is] provided to the parties in advance of the hearing." *Id.*; *see also* Rule 32(f) (requiring an opportunity for defendants to object to the findings of the probation officers). That is what this Court did on October 31 by notifying both parties that the Court anticipated considering these facts at sentencing. The Court timely notified the parties that certain facts might be relevant to sentencing and gave the parties an opportunity to discuss or dispute those facts. Rivera-Vasquez did not dispute them.

**2.** Rivera-Vasquez next contends that "an individual judge's policy preferences should not influence sentencing." Well said. The Court agrees. That is why the Court is pursuing *Congress's* policy preferences. Congress—not the courts—prohibited illegal aliens from certain acts, including possessing firearms or ammunition or entering the country without authorization. And Congress instructed courts to issue sentences high enough to deter violations of these policy preferences and promote respect for the law. § 3553(a)(2)(A)–(B).

8

**3.** Rivera-Vasquez similarly notes that that the Executive Branch gets to "decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *United States v. Texas*, 599 U.S. 670, 678 (2023) (citations omitted). True enough. But unlike in *United States v. Texas*, here the Federal Government *has* brought a prosecution. When the Executive Branch does so, it is up to courts to determine the severity of the sentence. Courts *must* impose sentences high enough to afford adequate deterrence. § 3553(a)(2)(B). And Rivera-Vasquez cites *Aguilar-Calvo*, which itself says courts may consider the nonenforcement decisions of the Federal Government when crafting a sentence.*

**4.** Finally, Rivera-Vasquez argues that the Federal Government's actions from 2021 through 2024 are irrelevant "in the context of this case." Not so. As explained above, unlawful presence in the country is a necessary element of the crime to which Rivera-Vasquez has pleaded guilty, and unlawful presence undermines respect for the law. By definition, a person cannot commit Rivera-Vasquez's offense (or many other immigration offenses) unless the person is in the country unlawfully. Yet Rivera-Vasquez does not dispute the findings of other courts that the Federal Government's actions from 2021 through 2024 fueled illegal

---

\* *Aguilar-Calvo* said federal nonenforcement could lead a district court to issue a *less*-severe sentence with respect to marijuana laws "given widespread enactment of state laws decriminalizing, legalizing, and regulating marijuana." 945 F.3d at 467. Under that logic, federal nonenforcement pulls in the opposite direction. Unlike marijuana, where nearly every State has deregulated to some degree, States have often and recently clamored for *more* enforcement of immigration laws. *E.g.*, *United States v. Texas*, 599 U.S. 670 (2023) (multi-State challenge to Federal Government nonenforcement policy); *Texas v. United States Dep't of Homeland Sec.*, 756 F. Supp. 3d 310, 353 (E.D. Tex. 2024) (16-State challenge to a policy of the Federal Government to release certain illegal aliens in the country); *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 192 (5th Cir. 2024) (granting an injunction to a State against the Federal Government after federal officials removed border barriers "for no apparent purpose other than to allow migrants easier entrance further inland"); *Indiana v. Mayorkas*, No. 1:23-cv-00106-DMT-CRH, 2024 WL 5358932 (D.N.D. 2023) (18-State challenge to asylum rules that the States asserted would increase the number of unlawful aliens in the United States).

9

immigration. *E.g.*, *Gen. Land Off.*, 722 F. Supp. 3d at 725–26. Indeed, he concedes that federal enforcement or nonenforcement affects rates of illegal immigration. Those initiatives are highly relevant to general deterrence. *See, e.g.*, *Kane v. New Jersey*, 242 U.S. 160, 167 (1916) ("[The] ability to enforce criminal and civil penalties for transgression is an aid to securing observance of laws.").

Rivera-Vasquez also focuses on specific deterrence at the expense of general deterrence. He asserts that the Federal Government's actions and inactions from 2021 through 2024 had nothing to do with his decision to remain in the country even though he was required to deport during that time. The Court doubts that assertion, but even assuming it were true, Rivera-Vasquez does not (and cannot) dispute that the Federal Government's actions and inactions during that time affected the decisions of similarly situated people to stay in the country. Many of those individuals are still in the country. And some may be deterred from unlawfully remaining in the country if courts issue higher sentences.

## Conclusion

Balancing the Department's compelling need to ensure speedy plea negotiations with the equally compelling need to issue a sentence high enough to deter, high enough to promote respect for the law, and high enough to account for the unnecessary harms Rivera-Vasquez imposed on police officers—and considering the other factors listed in § 3553—the Court issues a sentence of 12 months and 1 day, which is within the recommended Guidelines range. That sentence is about 3 times the recommendation of the parties, and about half of

what would be warranted had Rivera-Vasquez not accepted responsibility by pleading guilty and waiving indictment.

    Dated this 17th day of December, 2025

                                                      JOSHUA M. DIVINE
                                                      UNITED STATES DISTRICT JUDGE